IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REALTIME ADAPTIVE STREAMING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1693 (JFB) (SRF) |
| | ) | |
| SONY ELECTRONICS INC. and SONY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**SONY'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR A MORE DEFINITE STATEMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Defendant Sony Electronics Inc.*

OF COUNSEL:

Gregory S. Gewirtz
Jonathan A. David
Alexander Solo
LERNER DAVID LITTENBERG KRUMHOLZ
& MENTLIK LLP
600 South Avenue West
Westfield, NJ  07090
(908) 654-5000

February 5, 2018

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ...................................................................................................1

II. NATURE AND STAGE OF THE PROCEEDINGS ............................................1

III. SUMMARY OF THE ARGUMENT ...................................................................1

IV. STATEMENT OF FACTS ......................................................................................3

V. LEGAL STANDARDS ................................. **ERROR! BOOKMARK NOT DEFINED.**

VI. ARGUMENT .........................................................................................................6

    A.    Sony Cannot Determine Realtime's Grounds  Of Infringement As To The Accused Instrumentalities .................................................6

    B.    Realtime's Allegations As To Compatibility With Standards ................................................................................................11

    C.    Realtime's Allegations As To The H.265 Standard ...............................................12

    D.    Realtime's Broad Categories Of Accused Products .............................................14

    E.    Alleged "Decoding" By Accused Encoding Devices, And Alleged "Encoding" By Accused Decoding Devices ...........................................14

    F.    Counts II, V — Ownership Of The '462 And '298 Patents ..................................16

VII. CONCLUSION .....................................................................................................17

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alston v. Parker*,
    363 F.3d 229 (3d Cir. 2004) ............................................................................................... 6

*Baxter v. Rose*,
    305 F.3d 486 (6th Cir. 2002) ............................................................................................. 7

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003) ........................................................................................... 6

*Hewlett-Packard Co. v. Intergraph Corp.*,
    No. C 03-2517, 2003 U.S. Dist. LEXIS 26092 (N.D. Cal. Sept. 6, 2003) ...................... 10, 13

*St. Clair Intellectual Prop. Consultants v. Apple Inc.*,
    No. 10-00982, 2011 U.S. Dist. LEXIS 112280 (D. Del. Sept. 30, 2011) ............................ 6

*Taurus IP, LLC v. Ford Motor Co.*,
    539 F. Supp. 2d 1122 (W.D. Wis. 2008) .................................................................. 9, 10, 13

## Rules and Statutes

Fed. R. Civ. P. 12(e) ................................................................................................................ 1, 6

## I.     INTRODUCTION

Defendant Sony Electronics Inc. ("Sony") moves, pursuant to Fed. R. Civ. P. 12(e), for a more definite statement of the claims in the Complaint filed by Plaintiff Realtime Adaptive Streaming LLC ("Realtime"), as the Complaint is so vague and ambiguous that Sony cannot reasonably prepare a response.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2017, Realtime filed its Complaint against Defendants Sony Electronics Inc. and Sony Corporation.  (D.I. 1.)  On December 20, 2017, the parties filed a Stipulation to extend the time to January 19, 2018, for Sony Electronics Inc. to move, answer, or otherwise respond to the Complaint (D.I. 6), which was granted on December 21, 2017 (D.I. 7). On December 26, 2017, the parties filed a Stipulation of Dismissal of Defendant Sony Corporation (D.I. 9) such that only Defendant Sony Electronics Inc. now remains in the case. Finally, on January 16, 2018, the parties filed a Stipulation (D.I. 11) to extend the time to move, answer, or otherwise respond to the Complaint until February 5, 2018.

## III.     SUMMARY OF THE ARGUMENT

1.     Realtime's Complaint lists hundreds of different models from different product classes as the Accused Instrumentalities, but only specifically mentions a few products as supporting or using particular standards without clearly alleging how the Accused Instrumentalities infringe the asserted claims.  Realtime ambiguously alleges some facts about how some Sony products are compatible with a given standard, recites some of the features of the standard, and then concludes that all accused products infringe by parroting back the language of asserted claims.  Realtime's allegations do not include sufficient detail to enable Sony to reasonably prepare a response, and as they now stand are unintelligible, vague, and

ambiguous such that Sony cannot reasonably understand how each of the Accused Instrumentalities are alleged to infringe.   Accordingly, a more definite statement should be ordered.

2.      Realtime only pleads facts regarding how a few exemplary products are allegedly compatible with certain standards, such that it is vague and ambiguous as to which of the Accused Instrumentalities use which standards, when such standards are used, and how use of such standards meets the elements of each asserted claim.  Thus, Realtime should be ordered to provide a more definite statement in this regard as to all Counts.

3.      In Counts II and V, Realtime also fails to intelligibly allege how compatibility with a particular standard (H.265) even meets the steps of the asserted claims. Realtime merely lists out each step of the claim, and then provides citations to the H.265 specification and/or an article about the specification, without indicating how use of the standard performs the listed step.  Realtime's citations to cryptic passages in or about the standard are so vague and ambiguous that they fail to provide notice to Sony of how a given step is practiced by use of the standard.  Thus, Realtime should be ordered to provide a more definite statement as to these Counts.

4.      In addition to specific models, Realtime's repeated list of Accused Instrumentalities also includes certain broad classes of products such as "camcorders," "motion cameras," "film cameras," "music video recorders," "in-car receivers and players," and "next generation 4K media players."  Such nonspecific allegations to these broad product categories are completely vague and ambiguous as to which products are actually at issue such that Sony cannot reasonably prepare a response.  In fact, some allegations, such as alleged infringement against Sony's "film cameras," are vague and confusing as those products do not in any way

implicate the asserted standards.  Thus, a more definite statement should be provided as to the accused products in these broad categories.

5.      The asserted claims in Counts I, II, IV, VI, and VII all relate to apparatus or methods of compression encoding, but Realtime confusingly accuses Sony products of infringement by virtue of their decoders and decoding abilities.  Likewise, the asserted claims of Counts III and V relate to apparatus or methods for decoding or decompressing, but Realtime confusingly accuses Sony products of infringement by virtue of their encoding abilities.  Such allegations are unintelligible, vague, and ambiguous as to how there is infringement of such encoding claims, and therefore Realtime should be ordered to provide a more definite statement.

6.      Finally, in Counts II and V, it is vague and ambiguous as to the issue of ownership of the '462 and '298 Patents in order to confer proper standing.  The '462 Patent indicates no assignee on its face, while the '298 Patent lists a different assignee than Realtime. Thus, a more definite statement alleging facts as to how Realtime became the owner of these patents should be provided.

## IV.   **STATEMENT OF FACTS**

In its Complaint, Realtime asserts seven counts of infringement by Sony of U.S. Patent Nos. 7,386,046 ("the '046 Patent") (Count I); 8,634,462 ("the '462 Patent") (Count II); 8,929,442 ("the '442 Patent") (Count III); 8,934,535 ("the '535 Patent") (Count IV); 9,578,298 ("the '298 Patent") (Count V); 9,762,907 ("the '907 Patent") (Count VI); and 9,769,477 ("the '477 Patent") (Count VII) (collectively the "Asserted Patents").  (¶¶ 8-178.)[1]  The Asserted Patents all relate to video data compression or encoding.

---

[1]      References to ¶ herein are to the numbered paragraphs of Realtime's Complaint, D.I. 1. The Asserted Patents were attached as Exhibits A-G to the Complaint, D.I. 1-1 to 1-7.

Realtime alleges infringement by numerous different lines of Sony products, including security cameras, broadcast and production cameras, interchangeable lens cameras, camcorders, action cameras, motion cameras, film cameras, digital film cameras, music video recorders, professional camcorders, surveillance video encoders, satellite TV and receiver combos, gaming consoles, televisions, Blu-ray and DVD players, MP3 players, in-car receivers and players, video streaming services, media players, home theater projectors, and products using a certain chipset, all which Realtime re-lists in each Count as the "Accused Instrumentalities" for each Asserted Patent, as follows:

> Sony's video security camera series, including Minidomes series cameras SNC-VM772R, SNC-VM641, SNC-EM641, SNC-VM642R, SNC-EM642R, SNC-VM632R, SNC-VM602R, SNC-VM631, SNC-VM601, SNC-VM630, SNC-VM600, SNC-EM632RC, SNC-EM602RC, SNC-EM631, SNC-EM601, SNC-EM630, SNC-EM600, SNC-XM631, SNC-XM632, SNC-XM636, SNC-XM637, SNC-HM662, SNC-DH280, SNC-DH240T, SNC-DH140T, SNC-DH240, SNC-DH140, SNC-DH260, SNC-DH160, SNC-DH220T, SNC-DH120T, SNC-DH220, SNC-DH120, SNC-DH210T, SNC-DH110T, SNC-DH210, SNC-DH110, SNC-ZM551, SNC-ZM550;

> Fixed series cameras SNC-VB770, SNC-VB640, SNC-EB640, SNC-VB642D, SNC-EB642R, SNC-VB635, SNC-VB630, SNC-VB600, SNC-VB632D, SNC-EB632R, SNC-EB602R, SNC-EB630, SNC-EB600, SNC-EB630B, SNC-EB600B, SNC-CX600W, SNC-CX600, SNC-CH280, SNC-CH180, SNC-CH240, SNC-CH140, SNC-CH260, SNC-CH160, SNC-CH220, SNC-CH120, SNC-CH110, SNC-ZB550; and

> Pan Tilt Zoom series cameras SNC-WR632C, SNC-WR602C, SNC-WR602, SNC-WR630, SNC-WR600, SNC-ER585, SNC-ER580, SNC-EP580, SNC-ER550, SNC-EP550, SNC-ER520, SNC-EP520, SNC-RS86N, SNC-RS46N;

> other Pan/Tilt/Zoom cameras (for Broadcast & Production) SRG360SHE, BRCH900/PAC2, and BRCH900;

> the cameras ILCE-7RM3, ILCE-7RM2;

> Sony's interchangeable-lens cameras, compact cameras;

> Sony camcorders, action cameras, motion cameras, film cameras, digital film cameras, music video recorders, professional camcorders;

Sony Surveillance Video Encoders SNT-EX101, SNT-EX101E, SNT-EX104, SNT-EX154, SNT-EP104 and SNT-EP154;

and the Sony SAS-HD1SET H.264 satellite and receiver combo,

Sony PlayStation models including PS4 models, PS3 models, PS2 models, PS1 models,

Sony Televisions such as the Z9D series, A1E series, XBR-X930E-X940E series, XBR-X900E series, XBR-X850E series, XBR-X800E series, X700E series, X690E series, XBR-X940D-X930D series, XBR-X750D-X700D series, XBR-X800D series, XBR-X850D series, W630B series, W650D series, W600D series;

Sony Blu-Ray & DVD Players with playback capability of MPEG-4/AVC (.mov, .3gp, .3g2, .3gpp, .3gpp2, .flv) or MPEG-4 AVC (.mkv, .mp4, .m4v, .m2ts, .mts such as the UBP-X800 and UBP-X1000ES series;

Sony MP3 players;

Sony in-car receivers and players,

Sony 4K products including

the Sony 4K BRAVIA TVs,

Sony Video Unlimited 4K,

Next generation 4K Media Player,

Sony 4K Home Theater Projectors such as the VPL-VW500ES and VPL-VW1100ES,

Sony consumer 4K Handycams including the FDR-AX1, FDR-AX100,

4K products using the Sony IMX274 Chipset including the Urban Security Group (USG) Sony Chip Ultra 4K IP PoE Network Bullet Security Camera, the USG Sony Chip Ultra 4K IP PoE Network Dome Security Camera, the USG Sony DSP Ultra 4K IP PoE Network Bullet Security Camera,

and all versions and variations thereof since the issuance of the [asserted] Patent ("Accused Instrumentalities").

(¶¶ 17, 41, 65, 89, 113, 132, 156.)

As summarized in chart below, the Complaint identifies only one specific claim from each Asserted Patent as allegedly infringed by all Accused Instrumentalities, and makes

allegations of compliance with certain video compression standards (H.264 or H.265) for only some of the accused products:

| Patent (Count) | Asserted Claim | Alleged Standard & Mentioned Products |
|---|---|---|
| '046 (I) | claim 40 (¶ 30) | Alleged Standard:  H.264 video compression/encoding |
| '442 (III) | claim 8 (¶ 78) | Mentioned Products:<br>SNC-ZM550, SNC-ER550, SRG360SHE cameras |
| '535 (IV) | claim 15 (¶ 102) | (¶¶ 20-24, 68-71, 92-95, 135-38, 159-62) |
| '907 (VI) | claim 1 (¶ 145) | SNT-EX101, EX101E, EX104, EX154, SNT-EP104, EP154 surveillance video encoders |
| '477 (VII) | claim 1 (¶ 169) | (¶¶ 24, 72, 96, 139, 163) |
|  |  | SAS-HD1SET H.264 satellite and receiver combo<br>(¶¶ 25, 73, 97, 140, 164) |
| '462 (II) | claim 1 (¶ 55) | Alleged Standard:  H.265 video compression/encoding |
|  |  | Mentioned Products:<br>4K BRAVIA TVs<br>(¶¶ 42, 114) |
| '298 (V) | claim 1 (¶ 122) | USG Sony Chip Ultra 4K IP PoE Network Bullet and Dome Security Cameras<br>(¶¶ 43, 115) |

The Complaint also alleges that Sony infringes "other claims" of each of the Asserted Patents.  (¶¶ 32, 56, 80, 104, 123, 147, 171.)  For example, it states:  "On information and belief, Sony also directly infringes and continues to infringe other claims of the '046 Patent, for similar reasons as explained above with respect to Claim 40 of the '046 Patent."  (¶ 32.)

## V.    ARGUMENT

A party may move for a more definite statement of a pleading where the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).   Rule 12(e) has been interpreted to make relief available where a pleading is unintelligible, or the issues cannot be determined.  *St. Clair Intellectual Prop. Consultants v.*

*Apple Inc.*, C.A. No. 10-982, 2011 U.S. Dist. LEXIS 112280, at *5-6 (D. Del. Sept. 30, 2011) (internal citations omitted).

Rule 12(e)'s purpose "is to require greater specificity than what is ordinarily required under Rule 8(a)(2) in that narrow class of cases where the want of specificity precludes the defendant from properly framing an answer to a legally sufficient complaint." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 233 (D.N.J. 2003); *see also Alston v. Parker*, 363 F.3d 229, 237 n.7 (3d Cir. 2004) (noting that a more definite statement is a tool resolve ambiguity or vagueness); *Baxter v. Rose*, 305 F.3d 486, 490 (6th Cir. 2002) (stating that a Rule 12(e) statement is appropriate for a "truly unclear complaint").

### A. Sony Cannot Determine Realtime's Grounds Of Infringement As To The Accused Instrumentalities

Realtime's Complaint lists hundreds of different models from different product classes in its repeated list of "Accused Instrumentalities," and only mentions a few exemplary products as supporting a particular standard (*i.e.,* H.264 or H.265). Further, Realtime does not clearly allege how each Accused Instrumentality, or even each exemplary product, infringes the asserted claims, such as how each element is met by each product. Rather, it simply ambiguously alleges some facts about how some products are compatible with a given standard, recites some of the features of the standard, and then, in a conclusory paragraph, asserts that ***all*** accused products infringe by simply parroting back the claim language of the asserted claims. Such allegations are so vague and ambiguous that Sony cannot reasonably prepare a response.

Realtime follows a certain pattern of pleading for each Count.   By way of example, for claim 40 of the '046 Patent (Count I), Realtime first alleges that **some** of Sony's products include or support H.264 capabilities.   (¶¶ 18-19.)[2]

Second, Realtime lists a few exemplary products that it alleges supports or uses the H.264 standard.   (¶¶ 20-25.)   Realtime does not allege, however, how **all other** Accused Instrumentalities support or use the H.264 standard.

Third, Realtime alleges that "the Accused Instrumentalities" perform two functions as recited in the first sentences of ¶ 26 and ¶ 29[3] — which are unintelligible as they not even claimed in claim 40 — and then goes on to cite certain features of the H.264 standard from various specs, white papers, and articles, again without reference to the claim elements of claim 40.   (¶¶ 26-29.)

Finally, Realtime summarily alleges that, "therefore," Sony's use and testing of **all** of the "Accused Instrumentalities" meets the claim language its parrots from claim 40:

> 30.     Therefore, from at least the above, Sony has directly infringed and continues to infringe the '046 Patent, for example, through its own use and testing of the Accused Instrumentalities, which when used, practices the system claimed by Claim 40 of the '046 Patent, namely, *a system, comprising: a data compression system for compressing and decompressing data input; a plurality of compression routines selectively utilized by the data compression system, wherein a first one of the plurality of compression routines includes a first compression algorithm and a second one of the plurality of compression*

---

[2]     For example, Realtime alleges that "*several* of the Accused Instrumentalities possess H.264 *capabilities*," "Sony *supports* H.264," "*most or many* of Sony's cameras *utilize* H.264 *technology*," "Sony network cameras natively *support* H.264," and a "Committee of which Sony is a long-standing member recently received an Emmy Engineering Award for its *work on* H.264/MPEG-4's High Profile compression standard."  (¶¶ 18, 19 (emphasis added).)

[3]     The two functions listed by Realtime are:  "[t]he Accused Instrumentalities determine a parameter of at least a portion of a video data block" (¶ 26), and "[t]he Accused Instrumentalities compress the at least the portion of the data block . . . to provide one or more compressed data blocks . . . (see above)" (¶ 29).

> ***routines includes a second compression algorithm; and a controller for tracking throughput and generating a control signal to select a compression routine based on the throughput, wherein said tracking throughput comprises tracking a number of pending access requests to a storage device; and wherein when the controller determines that the throughput falls below a predetermined throughput threshold, the controller commands the data compression engine to use one of the plurality of compression routines to provide a faster rate of compression so as to increase the throughput.*** Upon information and belief, Sony uses the Accused Instrumentalities to practice infringing methods for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to their customers.

(¶ 30 (emphasis showing claim language).)

It is completely unclear as to which Accused Instrumentalities are alleged to infringe, let alone how each product meets each claim element. It is also unclear and unintelligible how compliance with the H.264 standard meets each element of the claim.

Realtime repeats this same type of generalized pleading format for the other Asserted Patents on the other Counts, and is not only unclear as to which Accused Instrumentalities are alleged to infringe, but it is unintelligible as to how use of the standards even meets the claim elements.

As another example, the asserted claims of Counts III, IV, VI and VII all require "asymmetric" compressors or algorithms, yet there is no indication how the encoding by the exemplary products or the Accused Instrumentalities is "asymmetric," only that H.264-complaint systems select between a "CAVLC" or "CABAC" encoder, without explaining how such encoders are "asymmetric" encoders. (*See* ¶¶ 28-29, 76-77, 100-01, 143-44, 167-68.) Still further, the asserted claims of Counts III, VI, and VII all claim use of throughput of a "communication channel," yet the Complaint does not allege anything about any use of a "communication channel" by the exemplary products, the Accused Instrumentalities, or by use of the standards.

Finally, in addition to the above, Realtime also fails to list the "other claims" that it alleges Sony infringes in ¶¶ 32, 56, 80, 104, 123, 147, and 171.

In sum, the Complaint is so ambiguous that Sony cannot intelligibly determine which products infringe, and how so. Realtime's complaint is tantamount to a general statement alleging that thousands of different types of Sony products may infringe. In *Taurus IP, LLC v. Ford Motor Co.*, 539 F. Supp. 2d 1122 (W.D. Wis. 2008), a case decided prior to abrogation of Form 18's sample complaint for patent infringement, the court granted a Rule 12(e) motion for a more definite statement where the complaint gave a few exemplary products and then accused all products at a list of websites showcasing the defendants' products. *Id*. at 1124-25. The court explained:

> Although plaintiff lists a few examples of allegedly infringing products in its complaint, it fails to specify which claims it believes are infringed and seeks to assert infringement of many unspecified products. Because defendants cannot respond to plaintiff's allegations without undue burden and prejudice, defendants' motion for a more definite statement will be granted. Plaintiff must provide a more definite statement identifying the claims it believes defendants' products infringe and listing all products it believes are infringing or providing a criteria by which defendants can identify the infringing products.

*Id*. at 1127. As to unspecified claims, the court also explained that "failure to specify which claims [a plaintiff] believes are infringed by a defendant's products places an undue burden on the defendant, who must wade through all the claims in a patent and determine which claims might apply to its products to give a complete response." *Id.*

Likewise, in *Hewlett-Packard Co. v. Intergraph Corp.*, No.C 03-2517, 2003 U.S. Dist. LEXIS 26092 (N.D. Cal. Sept. 6, 2003), another case decided prior to abolishment of Form 18 (then Form 16), the complaint had effectively pled infringement of over 4000 products. The court explained:

> Plaintiff's claim must be read as follows: one or more of Defendant's 4000-plus products directly infringes, contributorily infringes, or induces infringement of at

least one claim in each of the patents-in-suit.  Form 16 simply does not address a factual scenario of this sort.  Not only is the example in Form 16 limited to a single "type" of product (*i.e.*, electric motors) there is no indication as to the number of different electric motors the hypothetical defendant made, sold, or used.  In this case, there are at least 150 different "types" of products (*i.e.* core technology platforms) with more than 4000 end-user applications.  Based on these facts, the Court finds that Plaintiff's allegations do not provide Defendant with "fair notice" of what Plaintiff's claim or claims are and, therefore, fail to satisfy Rule 8(a)(2).

*Id.* at *6-7.  Here, Sony was not provided with fair notice as to which exact products Realtime's infringement claims are against, just a list of hundreds of potential products and/or product categories.

Accordingly, the Counts of the Complaint are so vague and ambiguous that Sony cannot reasonably prepare a response, and therefore a more definite statement should be ordered.

### B.   Realtime's Allegations As To Compatibility With Standards

Realtime's Complaint is also vague and ambiguous as to the H.264 or H.265 standards.  Although Realtime may be trying to allege infringement based on compatibility with standards, it lists only a few exemplary products that it says are "compatible" with such standards, and the Complaint is completely unintelligible as to how each product uses which standard, and how use of such standard(s) meets the claim elements of each asserted claim.  Realtime does not even allege whether the parts of the standards it mentions are optional or required, or whether the standards specify use of particular processes for encoding or compression.

The Complaint only provides some details of compatibility with certain standards by some products on the huge list of Accused Instrumentalities.[4]  It does not allege how

---

[4]     The only products (of the thousands accused) discussed in any detail in the Complaint are:  SNC-ZM550, SNC-ER550, and SRG360SHE cameras; SNT-EX101, SNT-EX101E, SNT-EX104, SNT-EX154, SNT-EP104 and SNT-EP154 surveillance video encoders; SAS-HD1SET

*(continued)*

nonexemplary Accused Instrumentalities are even compatible with, comply with, or actually perform, the video compression of the standards.  Accordingly, the Complaint is so vague and ambiguous as to which accused products perform which standards that Sony cannot reasonably prepare a response.

     C.     **Realtime's Allegations As To The H.265 Standard**

In Counts II and V, not only does Realtime fail to explain how the elements of the asserted claims are met, but it also fails to show how compatibility with the asserted H.265/HEVC standard relates to the claim steps.  Yet this standard is publically available and obviously in Realtime's possession based on its citations to the "HEVC Spec" throughout the Complaint.

Namely, in Count II, in ¶¶ 44-48, Realtime separately lists out each step of method claim 1 of the '462 Patent and then provides citations to the H.265/HEVC specification and/or an IEEE article about the specification.  But these citations do not reveal how use of the standard even performs each step.

For example, for the first step of claim 1 of the '462 Patent of "reducing temporal redundancy by block based motion compensated prediction in order to establish a prediction error signal," Realtime alleges:

> 45.    The Accused Instrumentalities reduce temporal redundancy by block based motion compensated prediction in order to establish a prediction error signal. [1] For example, clause 8.5.3 Decoding process for prediction units in inter prediction mode and the subclauses thereof of the HEVC Spec describe the block based motion compensation techniques used in the decoding process. [2] *See also, e.g.*, IEEE HEVC at 1651-1652 6) [("]Motion compensation: Quarter-sample precision is used for the MVs, and 7-tap or 8-tap filters are used for interpolation of fractional-sample positions (compared to six-tap filtering of half-sample

---

H.264 satellite and receiver; 4K BRAVIA TVs; and USG Sony Chip Ultra 4K IP PoE security cameras.

positions followed by linear interpolation for quarter-sample positions in H.264/MPEG-4 AVC).   Similar to H.264/MPEG-4 AVC, multiple reference pictures are used.   For each PB, either one or two motion vectors can be transmitted, resulting either in unipredictive or bipredictive coding, respectively. As in H.264/MPEG-4 AVC, a scaling and offset operation may be applied to the prediction signal(s) in a manner known as weighted prediction.").

But allegation [1] does not state how such decoding meets the required claim language of "reducing temporal redundancy" or "establish[ing] a prediction error signal." Likewise, allegation [2] above is a quote from an IEEE article, and does not explain how the quoted language about motion compensation will "reduce temporal redundancy . . . in order to establish a prediction error signal" as specifically claimed. Merely citing to cryptic passages about the standard is vague and ambiguous and provides no notice to Sony of how a given claim element is met even by practice of the standard.

The other allegations and citations for the other steps of claim 1 in ¶¶ 46-48 likewise fail to show how the cited material leads to the practice of each element of the claimed step. Again, the same type of cryptic citations to parts of the specification and an IEEE article are likewise made as to the steps of claim 1 of the '298 Patent in ¶¶ 116-20 without any allegations as to how such cited portions perform the particular claim step.[5]

Thus, Realtime's citations to papers and specs are so vague and ambiguous as to how use of the standards would actually infringe that Sony cannot reasonably prepare a response and a more definite statement should be provided.

---

[5]     For example, the citations to frame packing formats of various sections of the HEVC Spec in ¶ 116 do not explain how the claim step of "receiving the video stream which comprises *at least one composite frame (FC), each composite frame containing a pair of stereoscopic digital images (L,R)* . . ." is accomplished. Nor does the HEVC Spec citation in ¶ 118 explain what is the "metadata" and how it determines an occupied area, in the claim step of "receiving *metadata* which determine an area occupied by one of the two images within said composite frame . . . ."

### D.   Realtime's Broad Categories Of Accused Products

Still further, in its list of Accused Instrumentalities, Realtime alleges infringement by reference to certain overly broad classes of products (with no models alleged), including: interchangeable-lens cameras; compact cameras; camcorders; action cameras; motion cameras; film cameras; digital film cameras; other pan/tilt/zoom cameras (for broadcast & production); music video recorders; professional camcorders; MP3 players; in-car receivers and players; and next generation 4K media players.  (¶ 17.)  In fact, some allegations such as alleged infringement against Sony's "film cameras" are vague and confusing as those products do not in any way implicate the asserted standards.  Realtime also alleges a discontinued service in its list, namely "Video Unlimited 4K."  (*Id*.)

Such nonspecific allegations are vague or ambiguous as to which products are at issue such that Sony cannot reasonably prepare a response.  *See Taurus IP*, 539 F. Supp. 2d at 1124-25 (finding it inadequate to list a few examples of allegedly infringing products while seeking to assert infringement of many unspecified products); *Hewlett-Packard*, 2003 U.S. Dist. LEXIS 26092, at *6-7 (inadequate to allege one or more of over 4000 products directly infringes).  Thus, a more definite statement as to which such cameras, camcorders, receivers, recorders, and players, are actually accused should be ordered.

### E.   Alleged "Decoding" By Accused Encoding Devices, And Alleged "Encoding" By Accused Decoding Devices

The asserted claims of Counts I, II, IV, VI, and VII relate to apparatus or methods of compression coding or encoding, while the asserted claims of Counts III and V relate to apparatus or methods for decoding or decompressing.  In the Complaint, however, Realtime accuses Sony "encoding" products of alleged infringement by virtue of their decoders and decoding abilities and, *vice versa*, accuses Sony "decoding" products of infringing by virtue of

their encoding abilities.  Such allegations are vague, ambiguous, and unintelligible as to how there is purported infringement of coding or encoding claims.

For example, claim 1 of the '462 Patent (Count II) claims a "method for ***coding*** a video signal using hybrid ***coding***" with seven recited steps for such coding.  But in Count II, Realtime accuses Sony products based on their ***decoders*** and ***decoding*** capability.  For instance, Realtime alleges that Sony 2014 4K BRAVIA TVs "incorporate a ***decoder*** compatible with the latest H.265/HEVC . . . video compression format enabling, them to display 4K/60p content . . ." and that Sony's new 4K media player "incorporates a ***decoder*** compatible with the advanced HEVC compression format."  (¶ 42 (emphasis added).)[6]

The same follows, for example, for asserted claim 8 of the '442 Patent (Count III), which claims a "data decompression system configured to ***decompress*** a compressed data block."  But in Count III, Realtime accuses encoder products of infringement, alleging: "Sony's Surveillance Video Encoders all use H.264 as a 'Video compression format' as can be seen by the below datasheet."  (¶ 72.)  Likewise, Sony's Surveillance Video Encoders are also accused in Count V as infringing method claim 1 of the '298 Patent, which claims a method including a final "decoding" step.

---

[6]    The same is true for Realtime's other allegations, where:  claim 40 of the '046 Patent (Count I) claims a system comprising a "controller . . . [that] commands the data compression engine to use one of the plurality of compression routines . . ."; claim 15 of the '535 Patent (Count IV) claims a method of "selecting . . . compressors" and "compressing"; claim 1 of the '907 Patent (Count VI) claims a system comprising a "processor configured" to "select two or more different data compression routines"; and claim 1 of the '477 Patent (Count VII) claims a system comprising "a plurality of different asymmetric data compression encoders" and "one or more processors configured to" "determine" and "select one or more asymmetric data compression encoders."  All these Counts relate to specific systems or methods for compression coding/encoding.

Such allegations are unintelligible and ambiguous as to how they even relate to coding/encoding patent claims, or decoding/decompression claims, and therefore Realtime should be ordered to provide a more definite statement as to how such accused products perform compression coding or encoding (as to Counts I, II, IV, VI, and VII), and decoding or decompression (as to Counts III and IV) so that Sony can provide a response.

**F.**  **Counts II, V — Ownership Of The '462 And '298 Patents**

Finally, Realtime fails to plead how it became the owner of the '462 and '298 Patents.  Although the Complaint alleges "Realtime is the owner and assignee of the '462 ['298] Patent and holds the right to sue for and recover all damages for infringement thereof, including past infringement" (¶¶ 10, 13), it does not allege how or when Realtime became the owner, such as by way of assignment.

This is important because in terms of the patents themselves, the '462 Patent indicates no assignee on its face and only lists two inventors from Germany.  The '298 Patent, on the other hand, lists the assignee as "S.I.SV.EL. SCOIETA' ITALIANA PER LO SVILUPPO DELL'ELETTRONICA S.P.A," not Plaintiff Realtime.

Accordingly, this issue of ownership as to these patents cannot be determined from the pleadings to satisfy standing requirements, and a more definite statement by Realtime as to ownership should therefore be provided.

## VI.   <u>CONCLUSION</u>

Because Realtime has presented a complaint that is so vague and ambiguous that Sony cannot reasonably prepare a response, Realtime should be ordered to provide a more definite statement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

OF COUNSEL:

*Attorneys for Defendant Sony Electronics Inc.*

Gregory S. Gewirtz
Jonathan A. David
Alexander Solo
LERNER DAVID LITTENBERG KRUMHOLZ
& MENTLIK LLP
600 South Avenue West
Westfield, NJ  07090
(908) 654-5000

February 5, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 5, 2018, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                      *VIA ELECTRONIC MAIL*
Sara E. Bussiere, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiff*

Marc A. Fenster, Esquire                                          *VIA ELECTRONIC MAIL*
Reza Mirzaie, Esquire
Brian D. Ledahl, Esquire
C. Jay Chung, Esquire
Philip X. Wang, Esquire
Timothy T. Hsieh, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025-1031

                                                   */s/ Rodger D. Smith II*

                                                   _____
                                                   Rodger D. Smith II (#3778)